

In the United States District Court for the
Eastern District of Pennsylvania.


RECEIVED
SEP - 2 2011

Randy Hayward
        Plaintiff,

Case No.   11    5569

Vs

1) Pedro A. Cruz Arresting Officer (CRIAO) (ID C140)
Allentown Police Department
425 W. HAMILTON Street
Allentown, PA 18101-1627

(Sued In his Individual Capacity)

2) Officer Christopher R. Weiss (W7100) (ID W7100)
Allentown Police Department
425 W HAMILTON Street
Allentown PA 18101-1627
(Sued In his Individual capacity)

3) Officer Jason Presley
Allentown Police Department
425 W. HAMILTON St.
Allentown, P.A. 18101-1627
(Sued In his Individual Capacity)

4) District Attorney Diane Marakovits
Lehigh Co. District Attorney Office
Lehigh Co. Court House 455 W. Hamilton St
Allentown PA 18101 (Sued In her Individual Capacity)

5) Allentown Police Department
Brian S. Brader Approval officer (B0089) (ID B0089)
425 W. HAMILTON Street
Allentown, P.A. 18101-1627
(Sued In his Individual Capacity)

## I. Jurisdiction

1) Plaintiff brings this lawsuit pursuant to 42 U.S.C. 1983. This Court has Jurisdiction under 28 USC § 1331 & 1343(a)(3). and 28 USC § 1367(a) (Provides Jurisdiction for supplemental state law claims)

## II. Venue

2) The Eastern District of Pennsylvania is an appropriate Venue under 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred In this District.

## III. Parties

3) Plaintiff, Randy Hayward was at all times Relevant to this action a Prisoner who was Incarcerated and had to face charges alledged against him In Lehigh County Pennsylvania which at all times Relevant to this complaint is located in the District of Pennsylvania Eastern District.

4) Defendant Pedro A. Cruz Arresting officer was at all times Relevant to this action the arresting officer who is employed at the Lehigh county Allentown Police Department and was acting under the Color of Federal and State law. By statute Pedro A. Cruz The arresting officer who is Responsible for ensuring that Proper methods are taken when arresting alledged Individuals who had Committed Crimes Investigations of Crimes alledged Interviewing witnesses victims and the alledged Perpetrator(s) Preparing Documents Properly to be Presented Infront of Issuing officers (I.e affidavits of Probable causes Investigative Reports). Pedro A. Cruz is a Police officer employed at the Allentown Police Department. He is Sued in his Individual Capacity.

5) Defendant Christopher R. Weiss ID w7106 Rebooking officer was at all times Relevant to this action the Rebooking officer who is employed at the Lehigh County Allentown Police Department and was acting under The Color of Federal and State law. By statute Christopher R. Weiss is responsible for Gathering Information Investigating Interviewing alledged witnesses and alledged victims and Ensuring That Proper Information is provided to Allentown Police Department Allentown Police Detectives and the Department it Self. He is Sued in his Individual Capacity.

6) Defendant Jason Kresles was at all times relevant to this action the officer who provided Information on the Identity of Plaintiff who is employed at the Lehigh County Allentown Police Department and was acting under the Color of Federal and state law. He is Sued in his Individual Capacity.

7) Defendant Diane Marakovits was at all times Relevant to this Action the District Attorney Prosecuting the case against Plaintiff and was Acting under the color of Federal and state Law. By statute Diane marakovits is Responsible for Properly Prosecuting a Case In court To Ensure that the alledged accusser is not wrongfully convicted and to Present Evidence That is admissable for Proper Prosecution. She is Sued in her Individual Capacity.

8) Defendant Brian S. Brader Approval officer ID B0b09 was at all times Relevant to this Action employed at the Lehigh Co. Allentown Police Department Approved Allentown Police Department Arrest Report Report # 09008002-00-1 and who was acting under the color of Federal and State law. He is Sued in his Individual Capacity.

## VI. Facts

Plaintiff hereby Brings forth the facts Insupport of Claims alledged.

9) Plaintiff avers that Defendant Pedro A. Cruz Responded to a Call From Lehigh County Dispatch on January 28 2009 at approx 1646 hours Answering to an alledged Robbery and assault of Shantal Kent DOB 2-10-84 At the alledged victims Residence Located at 301 n. 9th Street, Allentown Pa 18102 accompanied By uniform officer Christopher R. Weiss.

10) Plaintiff Avers that upon arrival at the Alledged Scene of the Robbery and assault Defendant Pedro A. Cruz and uniform officer Christopher R. Weiss Observed the Alledged victim Shantal Kent having a Large wound on her forehead.

11) Plaintiff avers that Defendant Pedro A. Cruz and uniform officer Christopher R. Weiss Secured the apartment and notified Ems Personnel That it was Safe to Proceed to the alledged Victims apartment and Ems Personnel Treated ms. Shantal Kent for her Injuries.

12) Plaintiff Avers that the alledged victim Shantal Kent on January 28 2009 stated To Defendant Pedro A. Cruz That a Black male named "Power" assaulted her. And that she was in the apartment alone with "Power" Watching a movie When the alledged Robbery and assault occurred. She alledged that $800.00 of US Currency was taken as well as the alledged theft of two motorola Razor Cell Phones after the alledged assault Transpired.

(13) Plaintiff avers that Identification Officer "Officer Salgado" Responded to the alleged Victims Apartment to Process the Scene and than Reported back to Head Quarters.

(14) Plaintiff avers that On January 29 2009 alledged victim Responded to Head Quarters With Photographs of her Injuries. Detective Collins Spoke with Shantal Kent Kent Provided a written Statement of the Robbery Incident.

(15) Plaintiff avers that on February 9 2009 that alledged Victim again Responded to Head Quarters To Provide additional information on "Power"

(16) Plaintiff avers that Defendant Pedro A Cruz and detective Sannie Transported Shantal Kent to the alledged Crime Scene on 301 N 9th Street Allentown Pa 18103 Where Shantal Kent Pointed To a Residence of a Relative of "Power"

(17) Plaintiff avers on February 19 2009 that officer Jason Presley Stated that he Knows of a Black male named "Power" to be Plaintiff Randy Hayward. Although this Officer Claimed that Plaintiffs name was spelled "Heward"

(18) Plaintiff avers that Defendant Pedro A Cruz took this Information Provided By Officer Jason Presley and Searched Allentown Police department PISLE Records Locating the name Randy Hayward. Although Based on the name Provided By officer Presley which was spelled "Heward" not "Hayward"

(19) Plaintiff avers that on February 24 2009 Shantal Kent Called Head Quarters. Defendant Pedro A Cruz Stated that he had a Photo Line up for Shantal Kent to Pick from Shantal Kent Informed Defendant Pedro A Cruz that she could Identify Plaintiff Randy Hayward.

(20) Plaintiff avers that Later that Day on February 24 2009 Defendant Pedro A Cruz and officer Sannie met with victim Kent and asked her to Pick through a Set of Photos.

(21) Plaintiff avers that Defendant Pedro A Cruz informed Kent and that the Photo's Shown to her Should not Influence her Judgement in any way and that She Should not Conclude nor Guess that the Photographs contain the Photograph of the Individual To whom alledgedly committed the Crime.

(22) Plaintiff avers that Defendant Pedro A Cruz Handed the alleged victim Shantal Kent an 8 Photograph array of only the alledged Suspect namely Plaintiff Randy Hayward. Plaintiff also avers that despite Policies Customs and Procedures to be used by the Defendant Pedro A Cruz he never handed Shantal Kent The alledged victim any Other Photographs containing Possible Suspects to Be Identified through Photo arrays By which Defendant Pedro A Cruz Failure to Provide Other Suspects did not Free Innocent Persons from the Suspicion as to Identifying them as Guilty Parties namely Plaintiff Randy Hayward.

(23) Plaintiff avers that Because Defendant Pedro A Cruz did not Provide Other Suspects to be Identified in Photo Array The alledged Victim Shantal Kent without hesitation Pointed Directly at Plaintiff Randy Haywards Photograph. which is stated in the Defendants (Pedro a Cruz) Robbery Investigative Report Complaint# 04-2002 On the Date of March 1 2009. (See attached Exhibit A)

(24) Plaintiff avers that on February 29 2009 a warrant was Issued for Plaintiff Randy Hayward's arrest Authorized By mary Esther S. merlo magistrate Judge Approving arrest for Charges of Robbery 18 Pa CSA § 3701 (a)(v)(i)(a) aggravated assault 18 Pa CSA § 2702 (a)(c)(i) F1 aggravated assault 18 Pa CSA § 2702 (a)(iv) F2 Simple assault 18 Pa CSA § 2701(a)(i) m2 theft by unlawful taking or desposition 18 Pa CSA § 3921 (a)(i) m1 Receiving Stolen Property 18 Pa C.S.A § 3925(a) m1

(25) Plaintiff avers that at Preliminary hearing on March 10 2009 the alleged victim Shantal Kent Declared under oath that she was struck with a Bottle one time. Defendant Pedro A. Cruz in his Affidavit of Probable cause on march 2 2009 falsly alleged that Plaintiff Randy Hayward struck the alleged victim multiple times In the head with a Bottle.

(26) Plaintiff avers that at Preliminary hearing on March 10 2009 alleged Victim Shantal Kent Declared under Oath when Cross examined by Plaintiffs Public Defender mr Glascom that she does not recall seeing a Police officer at the scene of the alleged Crime. Defendant Pedro A. Cruz falsly stated to both him and officer Weiss (Christopher R.) that a Black male named "Powell" assaulted her Defendant Pedro A. Cruz also falsly alleged that she was in the apartment Alone with Powell watching a movie when the alleged assault and alleged Robbery of $800.00 US Currency occurred as well as the Theft of a model #QIA Cellphones Which was stated by Defendant Pedro a Cruz in his Robbery Investigative Report written March 1 2009) (See Robbery Investigative Report attached as exhibit A as supporting Agreement to 26) (also see Pages of Preliminary hearing Transcripts Of Shantal Kent Testimony as Exhibit A)

(27) Plaintiff avers that at Preliminary hearing On march 1 2009 alleged Victim Shantal Kent Declared under Oath when crossed examined by Plaintiffs Public Defender mr. Glascom that she simply just Got into the ambulance when it arrived. Defendant Pedro A. Cruz falsly alleged in his Robbery Investigative Report that ems workes scurp'ued to the apartment after being secured and assessed alleged victim Shantal Kent of her injuries and that once ems assessed her, she Related what happend to him to both defendant Pedro A Cruz and Christopher R Weiss. And (See Robbery investigative Report Exhibit A and Page 5 of Preliminary hearing Transcripts as Exhibit A)

(28) Plaintiff avers that at Preliminary hearing  on march 10 2009 alleged Victim Shantal Kent Declared under Oath during cross examination by Plaintiffs Public Defender mr Glascom that Ems took her to saint lukes Hospital after assessing her injures Defendant Pedro a Cruz falsly alleged in his Robbery Investigation Report that ems Transported alleged victim to sacred heart Hospital for further medical Treatment.

(See Robbery Investigative Report Exhibit A and Page Six(6) of Preliminary hearing as exhibit A)

(29) Plaintiff avers that at Preliminary hearing On march 10 2009 Victim Shantal Kent Declared under Oath during Cross examination by Plaintiffs Public Defender Mr Glascom that Plaintiff was in and out of her Apartment Periodically the Day of the alledged Robbery and assault (January 28 2009). Defendant Pedro a Cruz falsly alledged in his Robbery Investigative Report on march1 2009 that when he and uniform Officer Christopher R. Weiss   arrived @ Shantal Kents Residence that she (the alleged Victim) was in her Apartment Alone with Plaintiff watching a movie when the alleged Robbery and assault occurred (See Robbery Investigation Report Exhibit A and Preliminary hearing Transcripts Page 7 as Exhibit A)

(30) Plaintiff avers that a ~~District attorney Diane~~ District attorney Diane Marakovits attempted to use Photographs Of the Crime scene Depicting the Complyinant's Blood in the Bathroom Inorder to inflame the Juries passions and emotions. Despite Photographs having NO Evidentiary value to suppoct the relevant issues the alleged Robbery and assault Is not alledged to have occurred in the Bath of her (the alledged victim Shantal Kents Apartment) Apartment.

(31) Plaintiff avers that District Attorney Diane marakovits attempted to use Irrelevant Evidence to approve the Character of Guilt. (See motion In limine by Defendant in suppoct of Paragraph 30 and 31 of his Complaint to which was Granted by a Judge.)

(32) Plaintiff avers That District attorney Diane marakovits attempted to used Police Testimony about Information that "Powell" Real name may be "Randy Hesward" Police Testimony about Information' as to who "Powell" may be was attempted To be used against Plaintiff to Prove his Guilt when Police Testimony was Irrelevant, Prejudicial, Cumulative, heasay, and in violation Of the Rules of Discovery.

( See Defendants Motion in Limine and attached as Exhibit "B" and Request of court Granting this Evidence to be Precluded from Commonwealth Eliciting such Testimony)

(33) Plaintiff avers that Defendant Brian Brader approval officer approved Defendant Christopher K. Weiss to (who's) Allentown Police Department arrest report to which allegations are totally different from Defendant Pedro A. Cruz and his Robbery Investigative Report.

## V. Causes of Action

### Count 1

(34) Plaintiff Was Denied Due Process Under the Fourteenth Amendment to the Constitution.

(35) Plaintiff Incorporates Paragraphs 1 through 33 as though they were stated Fully stated herein.

(36) Defendants Cruz violated Plaintiffs Fourteenth Amendment rights to due Process By Falsifying Police documents to which lead to the arrest of Plaintiff Randy Hayward, Denying and detaining him of his Liberty to be free from unlawful arrest and Incarceration.

(37) Defendant Jason Presley violated Plaintiffs Fourteenth Amendment rights to Due Process By Providing False Information to which lead to the unlawful arrest of Plaintiff Randy Hayward. Jason Presley Provided Information that he knows of a Black man named "Power" and this Name was "Hayward" not "Hayward." Defendant violated Plaintiffs Fourteenth Amendment rights to Due Process By leading Defendant Pedro A. Cruz to Believe that the alledged suspect was Randy Hayward. which naturally led to Plaintiffs unlawful arrest and Incarceration without the Due Process of Law.

(38) Defendant Cruz violated Plaintiffs Fourteenth Amendment rights to due Process By Providing The alledged victim an 8 Photograph array of only Randy Hayward By which Defendant Cruz Failure to Provide other Possible Suspects to be Identified through Photo array did not free Innocent Persons from the Suspicion as to Identifying them as Guilty Parties namely Plaintiff Randy Hayward. Defendant Cruz violated Plaintiffs Fourteenth Amendment rights to due Process By Providing The alledged victim, an 8 Photograph array of only Randy Hayward (Plaintiff) which Influenced her Judgement and made her conclude and Guess that the Photographs contain the Photograph of the Individual to whom she-body committed the Crime Due not Providing other Photo arrays to Select from which lead to Plaintiff's Randy Hayward's unlawful arrest and Incarceration. Thus Depriving Plaintiff of his Liberty to be Free from unlawful arrest and Incarceration.

(39) Defendant Marakovits violated Plaintiffs Fourteenth Amendment rights to due Process By Providing The Courts with Evidence to be used against the Plaintiff Randy Hayward and attempting to use Erroneous, Prejudiced, and False Information Provided By Detective Defendant Pedro A. Cruz. To which This Defendant Should of look at the facts of the case before attempting To Prosecute, which Kept Plaintiff unlawfully Incarcerated.

(40) Defendant Brian S. Brader, violated Plaintiffs Fourteenth Amendment right to Due Process By authorizing an Allentown Police arrest report Based off of Defendant Pedro A. Cruz Robbery Investigative Report written, on March 1 2009. Brian S. Brader Defendant authorized an arrest Report that Had facts opposite to Robbery Investigative Report. Defendant Christopher K. Weiss Prepared Allentown Police Dept. arrest report and Defendant Brian S. Brader authorized it. To which Lead to Plaintiff Randy Hayward's unlawful arrest and Incarceration Robbery Investigative Reports arrest reports and affidavits of Probable Cause are all documents Prepared by and through Procedure and are used to allow Issuing authorities the authority to arrest and deprive one of his Liberty to be Free from unlawful incarceration and arrest.

(41) Defendant Christopher R. Weiss Violated Plaintiffs Fourteenth Amendment Right to due Process By Preparing, Allentown Police Dept. Arrest Report to which Was Prepared using facts opposite to Defendant Pedro A. Cruz and his Testamony in His Robbery Investigative Report Written on March 1, 2004. To which Because of this Improper Preperation of Allentown Police Dept. Arrest Report Defendant Weiss's actions lead to the unlawful arrest and Incarceration of Plaintiff Randy Forward

## VI. Prayer for Relief

Wherefore Plaintiff respectfully prays that this Court:

A. Order Defendants to pay Compensatory Damages in the Amount of $ 350,000 Seperately.

B. Order Defendants to pay Punitive damages in the Amount of $ 1,000,000. Seperately.

C. Order Defendants to pay Reasonable attorney fees and Costs of Prosecution

D. Grant any other Just and equitable Relief that this Honorable Court deems Necessary.

Respectfully Submitted,

Randy M Hayward

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          :
                                      :
              vs.                     :          No.    CR-984-2009
                                      :
RANDY HAYWARD.                        :

<u>DEFENDANT'S MOTIONS *IN LIMINE*</u>

AND NOW, comes the defendant, Randy Hayward, by and through his attorney,

Carol A. Marciano, Assistant Public Defender, and respectfully submits the following

motions *in limine*, and in support thereof, avers as follows:

I.      <u>Motion to Preclude References to the Accuser as the "Victim" at any Time During</u>

        <u>Trial or Instructions to the Jury</u>

        1. Defendant denies the allegations that he struck Shantel Kent in the head and took

her money and cell phones.

        2. In any criminal case, a defendant is presumed innocent unless and until a

factfinder determines guilt.

        3. References to Shantel Kent as the "victim" would convey the Judge's or

prosecutor's opinion that defendant committed the alleged crimes against her and suggests a

bias against the defendant.

        4. The use of "complainant", "complaining witness", or similar term would be more

neutral.

WHEREFORE, defendant requests this Court to enter an order precluding the use of the term "victim" at any time during trial or jury instructions.

II.    Motion to Preclude Evidence of Defendant's Juvenile Adjudication for Burglary When Defendant was Thirteen Years Old

1. Defendant may choose to testify at trial in the above-captioned matter.

2. According to defendant's criminal history provided by the Commonwealth, defendant was adjudicated delinquent of, inter alia, burglary, by the Ocean County New Jersey Juvenile Domestic Relations Court and given an "aggregate sentence" on July 9, 1996, of two (2) years confinement.

3. Defendant was 13 years old at the time.

4. On July 9, 1996, defendant received time credit of 225 days.

5. Therefore, pursuant to Pa.R.E. 609(b) and (d), the adjudication is per se inadmissible unless its probative value substantially outweighs its presumptive prejudice.

6. It should be noted the Commonwealth provided no written notice of its intention to use said conviction as required.

7. The presumptive prejudice of the burglary adjudication is not substantially outweighed by any probative value for the following reason (see, e.g., factors provided in Commonwealth v. Roots, 393 A.2d 364 (Pa. 1978), and its progeny):

- the adjudication occurred 13 years ago when defendant was just 13 years old, and as such, is not probative of his credibility at 26 years old;

- the defendant incurred no <u>crimen</u> <u>falsi</u> convictions since that time;

- because of the adjudication's remoteness in both time and maturity, it would

     serve only to smear his character and suggest propensity rather than reflect

     upon his veracity; and

- the defendant has no other means through which his version of events can be

     presented.

**WHEREFORE**, the defendant respectfully requests that the Court enter an order precluding the Commonwealth from presenting evidence of defendant's burglary adjudication if he chooses to testify.

III.    <u>Motion to Preclude Police Testimony About "Information" They Had That "Power's"</u>

    <u>Real Name May Be "Randy Heyward"</u>

1. According to a report by Detective Cruz, the affiant in this case, another Allentown Officer believed "Power" to be a black male known as Randy Heyward.

2. Detective Cruz received this information at approximately the same time the complainant informed him that she believed "Power's" name was "Randy Hayward".

3. Thereafter, the complainant selected the defendant's picture from a photo array as being "Power"—the person who she alleged struck her with the bottle.

4. Police testimony about "information" as to who "Power" may be should be excluded as irrelevant, prejudicial, cumulative, hearsay and in violation of the rules of discovery.

5. First, defense counsel received no discovery as to the source of an Allentown police officer's belief that Randy Hayward is known as "Power". Counsel can not effectively prepare for the receipt of such testimony at trial—even if it would somehow be admissible—and cannot effectively cross-examine on this testimony without eliciting potentially prejudicial responses.

6. Second, an Allentown police officer's information that "Power" was "Randy Hayward" is hearsay and not admissible pursuant to any exception to that rule.

7. Third, the fact that police had prior knowledge of the defendant implies he had prior contacts with police. There is a real danger the jury would impermissibly speculate that defendant has a prior criminal history and is a person of bad character because he is known to police.

8. Fourth, the complainant independently informed the police that she believed "Power" was "Randy Hayward". The complainant then identified the defendant in a photo array. The complainant alleges she knew Randy Hayward prior to the alleged incident. The significance of the nickname is only to connect it to a real name so that the alleged perpetrator could be identified. The complainant is the only person who can say whether Randy Hayward is the perpetrator. The nickname, in an of itself, is not probative of anything. Therefore, it is irrelevant whether the police connected the nickname to the real name. The police did not rely upon their own information to arrest the defendant, but rather, the identification provided by the complainant. The police testimony on this issue is irrelevant and cumulative.

WHEREFORE, defendant respectfully requests the Court enter an order precluding the Commonwealth from eliciting such testimony.

### IV.   Motion To Preclude Testimony That Complainant Believed Defendant Was A Drug Dealer

1. According to police reports, the complainant told Officer Christopher Weiss that prior to the alleged robbery and assault, the defendant asked her for one dollar bills to make a "sale".

2. The complainant then told Officer Weiss that she believed the defendant asked her for these bills because he was a drug dealer.

3. The complainant's speculation about defendant's being a drug dealer, or not, or his motivation for allegedly asking for the bills, is irrelevant.

WHEREFORE, defendant requests that this Court enter an order precluding such testimony.

### V.   Motion to Preclude Photographs of the Crime Scene Depicting the Complainant's Blood in the Bathroom

1. The Commonwealth has several photographs taken by police on January 28, 2009, depicting blood drippings and smears in the complainant's bathroom.

2. These photographs depict blood that dripped off the complainant in the bathroom as she tried to attend to her wound.

3. The robbery and assault is not alleged to have occurred in the bathroom.

4. The pictures have no evidentiary value to support the relevant issues.

5. The sole purpose of presenting such pictures to the jury would be to gratuitously depict blood in order to inflame the jury's passions and emotions.

6. The defendant is not disputing that the complainant had a gash on her head that bled in the apartment.

WHEREFORE, the defendant respectfully requests this Court to enter an order precluding the presentation of bloody bathroom photographs to the jury.


VI.    Motion to Order the Commonwealth to Disclose It's Witness List for Trial

1. Defense counsel requested from the Commonwealth its witness list for trial.

2. The Commonwealth refused to provide said list.

3. A criminal trial is not supposed to be "trial by ambush".

4. There is no discernible reason, except for surprise, for the Commonwealth to refuse to disclose its witness list for trial in the week preceding the commencement of said trial.

5. The request for a trial witness list the week before trial is reasonable.

6. The Commonwealth would not be put to any extraordinary burden to provide said list.

7. This Court, in its discretion, can order the Commonwealth to disclose its list of witnesses for trial. <u>See</u> Pa.R.Crim.P. 573(B)(2)(a)(iv); <u>Commonwealth v. Jones</u>, 668 A.2d 491, 512 (Pa. 1995) (construing former rule on this issue).

WHEREFORE, defendant respectfully requests this Court to order the Commonwealth to provide its witness list.

Dated: _9/8/09_

_Carol Marciano_

Carol Marciano
Assistant Public Defender
Attorney for Defendant

# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :
                               :
           vs.                      :     No.    CR-984-2009
                               :
RANDY HAYWARD.                    :

I, Carol A. Marciano, hereby certify and state that on this day I have served a true and correct copy of the attached Motion by hand delivery on the following:

Honorable Robert L. Steinberg
Courthouse, 8th Floor
455 W. Hamilton Street
Allentown, PA 18101

Diane Marakovits, Esquire
Office of the District Attorney
Lehigh County Courthouse
455 W. Hamilton Street
Allentown, PA 18101

Court Administrator
Lehigh County Courthouse
455 W. Hamilton Street
Allentown, PA 18101

CLERK OF COURTS
CRIMINAL – JUVENILE
LEHIGH COUNTY, PA
2009 SEP -8 A 8: 22
FILED

Dated: 9/8/09

_____
Carol A. Marciano
Assistant Public Defender

SURCHARGE: Defense motion to preclude testimony of police knowledge of defendant OTN#: K 7650484

Defendant ID#: 139545

OCS: Gloria Bobo, CD

# *LEHIGH COUNTY*

COMMONWEALTH vs. RANDY HAYWARD

JUDGE: Robert L. Steinberg

DISTRICT ATTY: Diane Marakovits

CASE NO. CR-0984-2009

CLERK: KAM

DEFT'S ATTY: Carol Marciano, PD

## <u>ORDER</u>

Now, September 8, 2009, the defense motion to preclude testimony that the police knew the defendant as "Power", is granted.

By the Court:

_____, J.

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

CRIMINAL DIVISION



COMMONWEALTH OF PENNSYLVANIA     :

            :

       vs.               :       No.    CR-984-2009

            :

RANDY HAYWARD.           :

## ORDER

AND NOW, this ___ day of September, 2009, upon consideration of the Defendant's

Motions *In Limine*,

IT IS HEREBY ORDERED that said Motions are GRANTED;

BY THE COURT:

_____

Robert L. Steinberg, J.

PRELIMINARY HEARING
RANDY HAYWARD
OTN K7650484
DEF. ATTY.: G. GLASCOM for C. MARCIANO
COMM. ATTY.: M. FALK
PROSECUTOR: PEDRO CRUZ, APD
DIST. JUSTICE: BECK
CENTRAL COURT
MARCH 10, 2009

Mr. Glascom: Testing, testing. This is Commonwealth versus Randy Hayward, OTN K7650484, today is March 7th...March 10th 2009, Rod Beck is the District Justice, Matt Falk is the District Attorney, and ah he has not applied for a Public Defender yet so he has to be assigned and ah....okay.

Mr. Glascom: Testing. Okay we'll plead not guilty and waive the reading. And for the record you are adding umm....2702 (a) (1) , that's to the criminal complaint.

Judge: What is the a-1?

Mr. Falk: It's causing or attempting to cause serious bodily injury.

Mr. Glascom: Which is attempting to cause serious bodily injury.

Judge: All who are going to testify please raise your right hand. Do you solemnly swear that statements made here today are the truth so help you God if so say I do.

Witness(es):  I do.

Judge: thank you.

Mr. Falk: Okay Miss I'm going to ask you to tell us your name and spell your last name?

Ms. Kent: Shantel Kent, K E N T.

Mr. Falk: Okay and Shantel I want to ah...ask you where you were living on January 28th of this year?

Ms. Kent: Ah....301 North 9th Street, Apartment D, Allentown.

1

Mr. Falk: Okay. And I want to direct your attention to that time of January 28th about umm…let's see 5 o'clock in the evening, is that about right?

Ms. Kent: Yes.

Mr. Falk: What happened about 5 o'clock in the evening at your apartment?

Ms. Kent: Umm…..I was inside my apartment with Randy and ah…we were….umm ////////// I had taken a shower umm….I changed umm….a large amount of one dollar bills that I had from work with him for a larger bills, he had knew I had money. I ah…umm…

*what di She mea*

Mr. Falk: Let me stop you there for just a second, how did you know Randy?

Ms. Kent: Ah….he was my neighbor he lived in the building on…down the street from me 9th Street.   *(She lives on 9th) 7/*

*Did he live in your buiding or down the street*

Mr. Falk: How long have you known ?

Ms. Kent: Since I'd say about, maybe the summer, July. *Is she positive?*

Mr. Falk: Okay. All right. So 6, 7 months?

Ms. Kent: Yeah, it was around summer //////////// I remember him from being in the area.   *Impossible, came home from prison (M.Y.C.F.) in October 2008*

Mr. Falk: Okay. And he saw… he knew you had money in the apartment?

Ms. Kent: Yes.

*How did he know money was in the house.*

Mr. Falk: Okay. What happened?

Ms. Kent: I had money, I had….I don't have a safe at home so I have umm .. a stuffed bear that was given as a gift for valentines day, I had a hole cut in it and I keep my money saved and rubber banded inside it hidden. Umm….we were actually leaving my apartment and I was going to ….I told him I was going to get money from my bear, so I had money on me, cause I need cash to eat and get cigarettes and that and both my cell phones I left them in the living room, I guess he had taken my cell phones, they were on, when I went to go get my money from my room, he came in my room, he snatched the bear from my hand and I guess I don't what I said at the time like what are you doing or what not and he swung a bottle and hit me in my head then it was pretty much ////// from then I ran …cause I felt warm blood going in my face so I ran to the bathroom and try and cover it, I think he was gone, I ran to my neighbors for help, umm …they didn't answer the door and lucky they were outside and seemed to be coming in that I knew from the building and they called and I told them that he had done this to me and they called 911 for me.

*Why no fingerprints on the bottle, if It was used by him. 2*

Mr. Falk: How much money did you have in the bear?

Ms. Kent: Umm...there was 400 hundred dollars put in the bottom of the bear and I had 450 dollars rubber banded in the top of the head of the bear. *UNSURE thinking of a lie to make up.*

Mr. Falk: Okay so you ....

Ms. Kent: So it was like 850 dollars. *It was like or was.*

Mr. Falk: Okay and you had 2 cell phones missing also?

Ms. Kent: Yeah 2 ///////////// phones.

Mr. Falk: Okay did he say anything to you when he hit you with the bottle?

Ms. Kent: No....I can't really remember if he said then I don't know if he said look or what not to get my attention to get me to turn around or what not. He had said something to get me to turn around from the ....position I was standing my back was kind of towards him.

Mr. Falk: Okay. *A contradiction on her answer.*

Ms. Kent: So it wasn't too many words said it was pretty much of an assault and he was gone.

Mr. Falk: And how many times did he hit you in the head with the bottle?

Ms. Kent: It was just once enough to break the bottle and ///////// into my face.

*IN THA AFFADAVIT SHE STATED SHE WAS HIT NUMEROUS*

Mr. Falk: Okay did you go to the hospital that day?

Ms. Kent: Yeah the ambulance ...the neighbors was ...they was coming in and I asked for them to call the ambulance for me and told them to call 911 because I didn't was looking for my cell phones and I couldn't find them I had figured at that time through the confusion that was going on that he had taken my cell phones so I didn't have a phone to call, my neighbor wasn't answering the door because she had heard the screaming and I had been robbed prior times before so, she had 7 children in that apartment, so she was pretty much scared to open the door. So ...

*WAS any reports made for the previous robberies? If so how many*

Mr. Falk: And ah...Shantel I want to show you a picture of you that was taken while you were at the hospital, do you recognize this picture?

Ms. Kent: Well I haven't seen the picture but I do remember what my face looked like from looking in the mirror when //////

3

Mr. Falk: And does that picture fairly and accurately depict what you looked like when you….after you got hit with the bottle?

Ms. Kent: Yeah I didn't realize it was that bad, it looks a lot worse in the pictures from what I actually remember seeing the cut there.

Mr. Falk: All right Judge I'm going to ask to I guess admit this picture.

Mr. Glascom: May I see it?

Mr. Falk: Shantel did you have stitches?

Ms. Kent: 10 stitches all given.

Mr. Falk: Okay and if you can show us over your eye if you still have the scar from?

Ms. Kent: I have cover up on it, I cover it the best I can it's really red and it's ….big and swollen and I don't have a lot of motion in the right side of my face, I'm just now being able to move my eyebrow and I will have pain on the top of my head yet.

Mr. Falk: And will that be a permanent scar?

Ms. Kent: Yeah. And it still hurts as much as the day he hit me. It's a recovery, I had no idea it would hurt that bad.

Mr. Falk: Okay and just so we're clear Shantel do you see the person in the Courtroom who hit you with the bottle and took your 850 dollars and your cell phones?  *she said she's not sure I took her phones now she's positive.*

Ms. Kent: Yeah.

Mr. Falk: Can you point him out to us?

Ms. Kent: Points to Defendant.

Mr. Falk: For the record Judge she's identified the Defendant. I don't have any further questions for Shantel.

Judge: Cross.

Mr. Glascom: Thank you. What…were you taken to the….first of all who called the Police?

Ms. Kent: Ah…his name was Q, it was my neighbors cousin downstairs. He was coming in the building to my neighbor.s house as I was running out for help.

4

Mr. Glascom: You ran out after this happened ….he left first and then you ran out of the house?

Ms. Kent: I ran into the bathroom first to try and cover my face, and I tried to find my cell phones to call for help.

Mr. Glascom: Okay and how long did you spend in the bathroom?

Ms. Kent: Oh….a couple minutes until ….

Mr. Glascom: Okay.

Ms. Kent: … until I couldn't stop the bleeding and I realized it was really bad and I needed to be taken to the hospital.

Mr. Glascom: Okay you applying towels and what not?

Ms. Kent: Umm….I applied a towel at first to stop the bleeding, I dropped the towel, I let a lot of the blood go, I just kind of cupped it with my hands and that and I ran downstairs to my neighbor for help.

Mr. Glascom: Okay and the neighbor that you found was Q?

Ms. Kent: Well the neighbor…..I knocked on my neighbors door, she didn't answer.

Mr. Glascom: Oh.

Ms. Kent: Umm….I guess she heard me screaming and she has 7 children inside her house like I said umm….her boyfriend is not around so I knew from before she was scared to open the door. So I ran outside and her cousin luckily was coming in to her apartment and I told him that he assaulted me, hit me with a bottle, robbed me.

Mr. Glascom: Okay so he called the Police?

Ms. Kent: I told him to call 911 for me.

Mr. Glascom: And then a policeman showed up and an EMT showed up?

Ms. Kent: I don't remember if I seen a police officer there but I seen an ambulance, they had pulled up, I just got in the ambulance and they….

Mr. Glascom: In a relatively short period of time?

Ms. Kent: Yeah.

Mr. Glascom: How much?

Ms. Kent: I don't know, they actually came up and got me at my apartment, I was back in my apartment and he told me to go back to my apartment and cover my face up to stop the blood.

Mr. Glascom: Which hospital did they take you to?

Ms. Kent: They took me to St. Lukes on Hamilton Street and 17th .

Mr. Glascom: Okay 17th and Hamilton Street. Okay and did you stay overnight?

Ms. Kent: No. They had did a CAT scan on me umm….and gave me I guess morphine or Vicadin or whatever and sent me home….they stitched me up and sent me home. I walked home.

Mr. Glascom: And the diagnosis basically was a cut and 10 stitches.

Ms. Kent: Concussion….

Mr. Glascom: They didn't say anything about a concussion or anything?

Ms. Kent: I have paperwork stating that I had a concussion.

Mr. Glascom: Oh you do?

Ms. Kent: Yeah.

Mr. Glascom: Okay are you still being treated by a doctor?

Ms. Kent: No I don't have medical coverage.

Mr. Glascom: Insurance you mean?

Ms. Kent: I haven't gone….yeah I'm sorry I don't have insurance.

Mr. Glascom: That's not what I'm asking about.

Ms. Kent: Yeah I never followed backup with a follow up and that umm….I didn't know I'd be covered for those and ….

Mr. Glascom: Okay. So you went to the hospital that one time got your stitches and you haven't had any medical prevention since is that right?

Ms. Kent: No, I was given a prescription and that for pain and ////

6

Mr. Glascom: Okay. Ah….okay now let's go back to the 5 P.M., what was ah….what was Mr. Hayward doing in your apartment?

Ms. Kent: Umm…..he had stopped by periodically from time to time to see how I was doing and stuff like that.

Mr. Glascom: Okay.

Ms. Kent: You know he's pretty much been a friend to me since I've been living there, he knows I've been robbed before and umm…..my situation you know I was fighting for custody of my son and that's the reason I was living in Allentown to get an apartment to prove stability. *Why did she lose him? who currently has custody*

Mr. Glascom: How long had he been in the apartment before this started?

Ms. Kent: That day?

Ms. Glascom: That day yeah.

Ms. Kent: Umm….at least he was probably in and out of the apartment probably like an hour and a half.

Mr. Glascom: In and out. I mean that particular visit?

Ms. Kent: Yeah he got the about an hour, hour and a half.

Mr. Glascom: So he was there about an hour …..

Ms. Kent: Yeah enough to watch the movie. I had a movie and that.

Mr. Glascom: Okay and then he saw the money and hit is that the idea? *What was movie?* ✓

Ms. Kent: No umm….I asked him ….I needed change and that as I bar tended in Philadelphia. *Is that her job? Police reported she stated she was an ~~cust~~ exotic dancer.*

Mr. Glascom: Okay.

Ms. Kent: So I had a lot of ones, a lot of one dollar bills and stuff like that. *If you had a lot ones why need change?* ✓

Mr. Glascom: Okay.

Ms. Kent: And umm….I didn't want to go to the store cause if I look like a waitress or a dancer what not it's kind of embarrassing giving a lot of ones and umm he said he had no problem getting them cashed in anyway. So he had the money he gave me, took a lot of one dollar bills for 20's. *I thought she needed change in one of her earlier statements.*

7

Mr. Glascom: So he gave you …

Ms. Kent: It was roughly about 70 dollars that he gave me in bigger bills.

*I thought she was robbed for 850$*

Mr. Glascom: And then you went into the bedroom?

Ms. Kent: I had put the money away. *where at ?*

Mr. Glascom: And then what happened exactly?

Ms. Kent: Umm….well I had taken a shower and stuff like that umm…

*you took a shower with a stranger in your house.*

Mr. Glascom: While he was in the apartment?

Ms. Kent: While he was in the apartment watching the movie and that.

*What was the movies name!*

Mr. Glascom: Okay.

Ms. Kent: At one point I came out *↑ of where.* and my cell phones and the 70 dollars I had in the pajama pocket it was ….it wasn't in there and that and he said he didn't take it …the ah….if I think he stole it or what not, he brought my phones back and that so it was kind of weird. *I thought your phones were taking*

Mr. Glascom: Okay.

Ms. Kent: But he gave my money back and my cell phones back at that point I put my money away. *were ste put nere money at again and if her money was taken why let me in her apt.*

Mr. Glascom: Okay and then where did he get the bottle of ah…whatever it was?

Ms. Kent: The grea….I had a empty bottle of great ////// I had from decoration from a Christmas party, I had 2 of them. I kept the decoration on a /////// bar I have in my apartment. *were's the bar/what room.*

Mr. Glascom: Okay so…

Ms. Kent: It was actually empty, I didn't have water or liquor or anything in it, it was just there for decoration.

Mr. Glascom: So you two weren't drinking?

Ms. Kent: No, no.

Mr. Glascom: This was an already …..

Ms. Kent: No it was just a decoration.

8

Mr. Glascom: Okay all right and then he just clumped you with it huh?

Ms. Kent: Yeah.

Mr. Glascom: Okay. Did you see it coming?

Ms. Kent: I just seen his hand swinging and going over the top of my head.

Mr. Glascom: Did you remember anything ….

Ms. Kent: I didn't realize it was a bottle until I seen the actual pieces of the bottle. I knew a bottle was broken on the floor.

Mr. Glascom: Do you remember anything further that he might have said when he ah….

Ms. Kent: I don't….I don't know what maybe was spoken that was to get my attention to get me to turn around.

Mr. Glascom: ////

*Now she says something was said.*

Ms. Kent: But I don't ….it wasn't a conversation or anything like that.

Mr. Glascom: Okay. All right. And did you see ….you saw him hit you?

Ms. Kent: Yeah.

Mr. Glascom: And it was him?

Ms. Kent: Yeah.

Mr. Glascom: And there was nobody else in the apartment?

Ms. Kent: Yes…no it was just me and him in the apartment.

*sounds a bit confused and unsure?*

Mr. Glascom: Okay and you saw him take the money?

Ms. Kent: He grabbed the bear, I didn't even get a chance to get the money outside of the bear, I was trying to put my fingers and pull it out, he grabbed….snatched the bear out of my hand.

Mr. Glascom: You saw him take it?

Ms. Kent: And basically he had seen where I …my stash pile was, where I kept my money.

*Why not steal it while goin in tha shower to ahad confrontation.*

9

Mr. Glascom: Did you see him take the cell phones too?

Ms. Kent: No I didn't actually I knew he was using one cell phone, he was using one and the other one was on the charger on my bar and they were both gone so ....

Mr. Glascom: Okay.                                    *Speculation*

Ms. Kent: ...I kept them out in the open my house is very clean I have little CDs so nothing would be out of place, ///////////////

Mr. Glascom: Okay. That's all I have.

Judge: ///

Mr. Falk: No redirect Judge. Commonwealth rests.

Judge: Commonwealth rests?

Mr. Falk: Yeah the Commonwealth rests.

Mr. Hayward: Can you ask some questions for me please?

Mr. Glascom: This is not ....no, I don't to do it because I'm afraid to. I don't want to because I don't know what's ///////////////

Mr. Hayward: I want to ask questions.

Mr. Glascom: No.  We'll ah....there is enough evidence for prima facie.

Judge: For prima facie and we'll hold it for Court.

Mr. Glascom: We can present it ...this is not the time to present it. Then you can say whatever you want.

ALLENTOWN POLICE DEPARTMENT

**CONTINUATION SHEET**

☐ ARREST        ☐ SUSPECT SUPP ATTACH

☐ JUVENILE SUB INVOLVED  ☐ CONNECTED REPORTS

| COMPLAINT NO. | INCIDENT CODE | DATE OF REPORT |
|---|---|---|
| 09-8002 | | 01Mar09 |

**INVESTIGATIVE RESULTS**

**RECEIVED**

SEP 04 2009

PUBLIC DEFENDER OFFICE
LEHIGH COUNTY

Robbery Investigation
Victim: Chantal Kent;dob:2/10/84
Location: 301 N.9th Street, Capt.
Date: 28Jan09   Time: 1646hrs

On listed date and time, Det.Sannie and I were in the center city area of Allentown when the Communication Center dispatched a call to listed location for a robbery. The victim was assaulted during the incident. We responded to the location and arrived with uniformed Officer Weiss. We proceeded upstairs to apartment D. We made contact with the victim Chantal Kent. Kent had a large laceration to her forehead. Inside the apartment was Quran Bowman. We secured the apartment and notified EMS it was safe to proceed to the apartment. EMS responded and treated Kent for her injuries. Kent stated a black male named "POWER" was the individual who assaulted her. Kent stated she was alone in the apartment with POWER watching a movie when he assaulted her with a large GREY GOOSE bottle and took approx. $800.00 U.S. currency and her Motorola Razor cell phone. Officer Weiss continued speaking with Kent while I continued looking for any evidence in the apartment. Kent was transported to Sacred Heart Hospital for further medical treatment. Identification Officer Salgado responded to the apartment and processed the scene. Once the apartment was processed, we secured the apartment and responded back to headquarters.

On 29Jan09, Chantal Kent responded to headquarters where photos were taken from her injuries. Det.Collins spoke with Kent. Kent provided a written statement of the robbery incident. On 01Feb09, Kent responded to headquarters to provide information on POWER. Det.Sannie and I transported Kent to the area of 301 N.9th Street where she pointed a rear apartment with the entrance on Chew Street as the apartment that belonged to a relative of POWER. The apartment appeared vacant and a white male was conducting work to the apartment. We dropped Kent off at another location and returned to the apartment to speak with the male but the male was no longer at the location.

On 19Feb09, I received information from Officer Jason Presley that he knew a black male known as POWER to be Randy Heyward. I checked the APD aisle records and located a HAYWARD, RANDY;DOB:10-07-1982. I called Kent but was not able to make contact with her. On 24Feb2009, Kent called me at the office. I informed her I had a photo lineup to show her. Kent stated she learned the identity of POWER to be RANDY HAYWARD. Later in the evening, Det.Sannie and I met with Kent. I informed her that I wanted her to look at a group of photographs and the fact that the photos are shown to her should not influence her judgment in any way. She should not conclude nor guess that the photographs contain the picture of the person who committed the crime. She did not have to

| OFFICER PREPARING REPORT-PRINT | ID | SUPERVISOR APPROVING REPORT | ID | DATE |
|---|---|---|---|---|
| DETECTIVE PEDRO CRUZ | C2920 | | | |

| CLERK ID | DATE | THIS OFFENSE IS | 1. ☐ UNFOUNDED | 3. ☐ INACTIVE-NOT CLEARED | 5. ☐ CONTINUE INVESTIGATION |
|---|---|---|---|---|---|
| | | | 2. ☐ CLEARED BY ARREST | 4. ☐ CLEARED BY EXCEPTION | 6. ☐ CLEARED-NO ARREST |

REVISED 3/2007

AISLE 8

## ALLENTOWN POLICE DEPARTMENT

### CONTINUATION SHEET

☐ ARREST          ☐ SUSPECT SUPP ATTACH

☐ JUVENILE SUB INVOLVED   ☐ CONNECTED REPORTS

| COMPLAINT NO. | INCIDENT CODE | DATE OF REPORT |
|---|---|---|
| 09-8002 | | 01Mar09 |

**INVESTIGATIVE RESULTS**

identify anyone.  It was just as important to free innocent persons from the suspicion as to identify guilty parties.  I handed her the eight photo array of RANDY HAYWARD.  Without hesitation, Kent pointed at RANDY HAYWARD's photo.  Kent stated that was POWER.  I asked her to circle the photo and date, time and sign the photo array.

On 29Feb09, an arrest warrant was issued for RANDY HAYWARD who was currently in Northampton Prison for another case.

| OFFICER PREPARING REPORT-PRINT | | ID | SUPERVISOR APPROVING REPORT | ID | DATE |
|---|---|---|---|---|---|
| DETECTIVE PEDRO CRUZ | | C2920 | | | |

| CLERK ID | DATE | THIS OFFENSE IS | 1. ☐ UNFOUNDED | 3. ☐ INACTIVE-NOT CLEARED | 5. ☐ CONTINUE INVESTIGATION |
|---|---|---|---|---|---|
| | | | 2. ☐ CLEARED BY ARREST | 4. ☐ CLEARED BY EXCEPTION | 6. ☐ CLEARED-NO ARREST |

REVISED 3/2007

AISLE 8

1-29-09

← Power          HQ
B/m, mid 20's, 5'7, dark,
shaved beard, Blood

©® Roxy's baby daddy

Landlord→Danny
301 N. 9th St.

✱ Stolen from Shantel Kent
484-664-0774(c) ①
  T-Mobile   PnK Clip Phone
  Camera Phone

**ALLENTOWN POLICE DEPARTMENT**
**VICTIM/WITNESS**
**STATEMENT**

RECEIVED
SEP 04 2009
PUBLIC DEFENDER OFFICE
LEHIGH COUNTY

MADE BY: Shantel Kent          INCIDENT NO. 09-8002

ADDRESS: 1033 Karoly St Freemansburg PA 18017 610-691-8026

TIME: 1900 DATE: 29 Jan 09 PLACE: Int Room

OFFICER TAKING STATEMENT: Collins

Power Nocked on my door. I opened the door
Said hi he can men in he was watching a movie
will i was getting my coat on + getting and
he asked My where a Kept my money I said
the ~~xxxxx~~ closest place to my heart my son's
Red stuffed dog he took it from my bed and
hit me in the head with the empty Vodka bolt
and he Ran on of my Apparment and I
Ran the bathRoom to grab A towel to stop
te bleeding from my head + my neighbor called
911 for me

PAGE 1 OF 3

SK

Allentown Police Department
Victim/Witness
Statement (Final Page)

_____

_____

_____

_____

_____

_____

_____

_____

Q.   Is the information contained in this_____page statement true and correct to the best of your
     knowledge and belief?

A.   *Yes*_____

Q.   Was this statement given of your own free will and accord, without and promises or threats?

A.   *Yes*_____

Q.   Do you understand what we are talking about in this statement?

A.   *Yes*_____

Q.   Are there any corrections in the statement that you wish to make?

A.   *No*_____

Q.   Will you now sign the statement and initial each of the____*3*____pages?

     SIGNATURE:_____

TIME:_*7:45*_____

WITNESS(ES):

     _____

     _____

                                   PAGE _*3*_ OF _*3*_

                                        *SK*

ALLENTOWN POLICE DEPARTMENT
Arrest Report
Report#: 09008002-00-1

Grade/Rank:                Job Specialty:             Service:
Per Status:                Military Status:           Org/Major Command:

---- *CHARGES* ----

**Charge #: 1**
Section: CC3701A1IVF2   (Robbery - inflicts bodily injury)
Counts: 1
UCR: 0310  IBR: 0315
Charge Type: CC
Level: F2
Warrant:
Dispo:   Dispo Date:

**Charge #: 2**
Section: CC2702A4F2    (Aggravated Assault - with Deadly Weapon)
Counts: 1
UCR: 0440  IBR:
Charge Type: CC
Level: F2
Warrant:
Dispo:   Dispo Date:

**Charge #: 3**
Section: CC3921AM1   (Theft by Unlawful Taking or Disposition Other over $200  mov)
Counts: 1
UCR: 0619  IBR:
Charge Type: CC
Level: M1
Warrant:
Dispo:   Dispo Date:

**Charge #: 4**
Section: CC2701A1M2   (Simple Assault -  Attempts to Cause or intentionally, knowin)
Counts: 1
UCR: 0801  IBR:
Charge Type: CC
Level: M2
Warrant:
Dispo:   Dispo Date:

*ARREST NARRATIVE*

SEE INVESTIGATIVE SUPPLEMENT

FILE COPY

ALLENTOWN POLICE DEPARTMENT
Arrest Report
Report#: 09008002-00-1


Signed/Authored by: CRUZ,PEDRO A.

        APPROVED by: MEDERO,JORGE L.

FILE COPY

Prepared By: G3380
Prepared Date: 02/02/2009

PAGE1

### ALLENTOWN POLICE DEPARTMENT
### Offense Report
### INCIDENT NUMBER: 09008002-00

*INCIDENT INFORMATION*

Date Reported: 01/28/2009                    Time: 1646
Report Officer: W7108   (WEISS)
Approval Officer: B0689   (BRADER)
Invest Officer:
Date Occurred: 01/28/2009          Time:              1646
Location:  301 N 9TH ST           Pref:                        Apt: D
City: ALLENTOWN                   State: PA                    Zip: 18102-
Latest Poss Date:                 Time:
Rpt District:   314               Beat:              B402       Shift:
Command Area:
Damage Prop:     $0               Stolen Property:   $1200      Stolen Vehicle: $0
Disposition:    TO CONTINUE-INVESTIGATION                      Disposition Date: 01/28/2009

*OFFENSES*

Offense: UC0315  (ROBBERY - RESIDENCE)
        IBR Code:    Att/Comp:    UCR: 0315    UCR Arson:

*VICTIM*

Name: KENT,SHANTEL
Juvenile: NO
Address:   301 N 9TH ST  ALLENTOWN, PA 18102
Bldg:    Apt #: D
Phone:                    SSN:              DOB:              Sex:   F      Race: B
DL Number:                State:            Hgt:  5'07  Wgt: 130   Hair: BLK  Eyes: BRO
Employer:                 Phone:
Emp Addr:
Bldg:    Apt #:

*WITNESS/INV PARTY*

Invol Type: COMPLAINANT          Name: WALTERICK,JILL
Juvenile: NO
Address:
Bldg:    Apt #:
Phone:                    SSN:              DOB:         Sex:        Race:
DL Number:                State:            Hgt:         Wgt:        Hair:       Eyes:
Employer:                 Phone:
Emp Addr:
Bldg:    Apt #:

Invol Type: OTHER                Name: BOWMAN,QURAN
Juvenile: NO
Address:
Bldg:    Apt #:

Prepared By: G3380
Prepared Date: 02/02/2009

ALLENTOWN POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 09008002-00

PAGE2

Phone:
DL Number: ███████████        SSN:            DOB: ████████
Employer:                    State:          Hgt: 5 07  Wgt: 170    Sex: M    Race: B
Emp Addr:        ,           Phone:                                Hair: BLK  Eyes: BRO
Bldg:    Apt #:

Invol Type: OTHER
Juvenile: NO                      Name: UNKNOWN, DANNY
Address:        ,
Bldg:    Apt #:
Phone:
DL Number:                   SSN:            DOB:        Sex:        Race: A
Employer:                    State:          Hgt: '      Wgt:        Hair:        Eyes:
Emp Addr:        ,           Phone:
Bldg:    Apt #:

Invol Type: OTHER
Juvenile: NO                      Name: UNKNOWN, ROXY
Address:    AREA OF 13TH ST  ALLENTOWN, PA
Bldg:    Apt #:
Phone:
DL Number:                   SSN:            DOB:        Sex:        Race:
Employer:                    State:          Hgt: '      Wgt:        Hair:        Eyes:
Emp Addr:        ,           Phone:
Bldg:    Apt #:

*SUSPECT*

Name: UNKNOWN, POWER
Juvenile: NO
Address:        ,
Bldg:    Apt #:
Phone:
DL Number:                   SSN:            DOB:        Sex: M      Race: B
Employer:                    State:          Hgt: 6'00   Wgt:        Hair: BLK   Eyes:
Emp Addr:        ,           Phone:
Bldg:    Apt #:

*PROPERTY*

Property Tag #
Rec Type:            STOLEN
Ucr Type:            MISCELLANEOUS
Brand:               MOTOROLA          Property Type:   COMMUNICATION EQUIP {K}
Description:         CELL PHONE        Model:           RAZOR
Owner Applied No:                      Serial No:
Date Reported:                         Value Stolen:    $200    Value Recovered:
Date Recovered:                        Time: 1646
                                       Time:

Prepared By: G3380
Prepared Date: 02/02/2009                                                    PAGE3

ALLENTOWN POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 09008002-00

Property Tag #
Rec Type:          STOLEN
Ucr Type:          MISCELLANEOUS
Brand:             MOTOROLA              Property Type:    COMMUNICATION EQUIP (K)
Description:                             Model:            RAZOR
Owner Applied No:                        Serial No:
Date Reported:                           Value Stolen:     $200    Value Recovered:
Date Recovered:                          Time: 1646
                                         Time:

Property Tag #
Rec Type:          STOLEN
Ucr Type:          CURRENCY, NOTES
Brand:                                   Property Type:    NEGOTIABLE ITEMS CASH (A)
Description:       800 PLUS IN CASH       Model:
Owner Applied No:                        Serial No:
Date Reported:                           Value Stolen:     $800    Value Recovered:
Date Recovered:                          Time: 1646
                                         Time:

Property Tag #
Rec Type:          EVIDENCE
Ucr Type:
Brand:                                   Property Type:    MISCELLANEOUS (K)
Description:       NECK OF A GREY GOOSE VODKA BOTTLE USED TO STRIKE THE VICTIM    Model:                                                                                    Serial No:
Owner Applied No:                        Value Stolen:              Value Recovered: $0
Date Reported:                           Time: 1646
Date Recovered:                          Time: 1730

TOTAL VALUE STOLEN: $1200
TOTAL VALUE RECOVERED: $0

*NARRATIVE*

RESPONDED TO LOCATION FOR AN ARMED ROBBERY. SEE SUSPECT NARRATIVE FOR DETAILS.

_____

REVIEWED by WEISS,CHRISTOPHER R.

_____

APPROVED by BRADER,BRIAN S.

Prepared By: G3380
Prepared Date: 02/02/2009

PAGE1

ALLENTOWN POLICE DEPARTMENT
Suspect
Report Number: 09008002-00-1

*Personal Information*

Name: UNKNOWN,  POWER
Date of Birth:
SSN:
State ID Number:
Alien Reg Number:                          FBI ID Number:
Drivers License:
Expires On:                                State:
                                           Class:

Race: BLACK
Hgt: 6'00                                  Sex: MALE
Hair: BLACK                                Wgt/lbs:
Build:                                     Eyes:
Ethnic:

Address:
City:                            Pref:      Apt:
Phone:                           State:     Zip:

*Employment Information*

Employer:
Address:                  Occupation:
City:                     Pref:
Phone:      Ext:          State:                      Apt:
                                                      Zip:

*Military Information*

Grade/Rank:
Per Status:               Job Specialty:
                          Military Status:            Service:
                                                      Org/Major Command:

*Aliases/Gang References*

Last, First Middle
                                 DOB                        SSN

*Scars/Marks/Tattoos/Clothing*

Identifier Type
                                 Description

*Physical Characteristics*

Hair Style:
Hair Type:
Facial Hair:
Complexion:
Appearance:

Prepared By: G3380
Prepared Date: 02/02/2009

PAGE2

ALLENTOWN POLICE DEPARTMENT
Suspect
Report Number: 09008002-00-1

Speech:
Hand Use:
Teeth:
Glasses:
Hat:
Gloves:
Mask:

*Offense Information*

Offense: -
Occured On:
Victim/Suspect Relationship:
Victim Race:

Latest Date/time:
Victim DOB:
Victim Sex:

*Modus Operandi*

Place of Attact: RESIDENCE
Attack Object: RESIDENTAL
Premise Type: APARTMENT/CONDO
Entry Point: FRONT DOOR
Entry Method: NO FORCE
Depart Method: ON FOOT
Method Attack Person:   VICTIM INJURED
                        FRIEND/RELATIVE
                        KNEW LOCATION HIDDEN PROPERTY
                        STRUCK VICTIM
Suspect Demeanor: CALM
Method Attack Property:
Property Type: CURRENCY OTHER
Evidence Collected:
Number of Companions:

*Fingerprints*

Left Hand
Thumb  Index  Middle    Ring    Little

Right Hand
Thumb  Index  Middle    Ring    Little

*Narrative Information*

ON SCENE R/O KNOCKED ON LISTED APARTMENT DOOR. THE VICTIM ANSWERED THE DOOR ALONG WITH
QURAN BOWMAN. THE VICTIM HAD A LARGE DEEP LACERATION TO THE RIGHT SIDE OF HER FOREHEAD.
THE VICTIM STATED SHE LET A FRIEND SHE ONLY KNOWS AS "POWER" INTO HER RESIDENCE. THE
VICTIM THEN STATED SHE WAS STRUCK IN THE HEAD WITH A LARGE BOTTLE. THE VICTIM STATES
"POWER" WAS THE ASSAILANT. THE VICTIM WAS THEN TRANSPORTED TO ST. LUKES HOSPITAL BY EMS.
R/O OBSERVED THE FOLLOWING INSIDE THE VICTIM'S APARTMENT: INSIDE THE VICTIM'S BEDROOM NEXT
TO HER BED WERE MANY PIECES OF A GLASS BOTTLE ALL OVER THE FLOOR. THE FLOOR ALSO HAD BLOOD
SPLATTER MIXED WITH GLASS PIECES. THE NECK OF THE BOTTLE WAS LOCATED NEXT TO THE TV IN THE
VICTIM'S BEDROOM. THERE WERE BLOOD DROPLETS ON THE FLOOR LEADING TO THE BATHROOM AND BLOOD
ON THE SINK AND THE MIRROR IN THE BATHROOM. THE REST OF THE VICTIM'S APARTMENT APPEARED

Prepared By: G3380
Prepared Date: 02/02/2009                                                  PAGE3

ALLENTOWN POLICE DEPARTMENT
Suspect
Report Number: 09008002-00-1

UNDISTURBED.
QURAN BROWN WAS ON SCENE WHEN R/O ARRIVED. BROWN STATED HE WAS CROSSING THE STREET OUTSIDE
LOCATION WHEN HE SAW THE VICTIM STANDING OUT FRONT OF THE LOCATION SCREAMING FOR HELP WITH
THE LARGE LACERATION TO HER HEAD. BROWN STATED HE HELPED THE VICTIM BACK UP TO HER
APARTMENT AND SHE TOLD HIM THAT A MALE NAMED "POWER" STRUCK HER IN THE HEAD WITH A BOTTLE.
BROWN STATED HE DID NOT SEE "POWER" IN THE AREA AND ONLY KNOWS HIM BY HIS STREET NAME
"POWER". BROWN STATED "POWER" USED TO LIVE IN THE BUILDING THE VICTIM LIVES IN.
APD CRIME SCENE IDENTIFICATION UNIT ARRIVED ON SCENE AND PROCESSED THE CRIME SCENE. THE
GLASS BOTTLE NECK WAS TAKEN AS EVIDENCE.
R/O SECURED THE RESIDENCE UPON LEAVING.
R/O WENT TO ST. LUKES HOSPITAL ALLENTOWN TO SPEAK WITH THE VICTIM.
THE VICTIM AGAIN STATED SHE ALLOWED "POWER" INTO THE RESIDENCE BECAUSE HE WAS A FRIEND WHO
USED TO LIVE IN THE SAME BUILDING IN AN APARTMENT UNDERNEATH HERS. VICTIM STATES "POWER"
STOPS BY PERIODICALLY.
THE VICTIM AND "POWER" WERE HAVING A CONVERSATION ABOUT MONEY. THE VICTIM IS AN EXOTIC
DANCER AND "POWER" WAS AWARE OF THIS AND ASKED THE VICTIM IF HE COULD HAVE SOME ONE DOLLAR
BILLS TO MAKE A "SALE". VICTIM TOLD R/O SHE BELIEVES "POWER" IS A DRUG DEALER AND THAT IS
WHY HE WANTED THE ONE DOLLAR BILLS. THE VICTIM GAVE "POWER" SOMEWHERE BETWEEN 50 AND 70
DOLLAR BILLS. "POWER" THEN LEFT THE RESIDENCE. "POWER" RETURNED SOMETIME LATER AND AGAIN
WAS LET INTO LOCATION BY THE VICTIM. "POWER" THEN ASKED THE VICTIM WHERE THE REST OF HER
MONEY WAS. THE VICTIM TOLD "POWER" SHE HAD IT IN HER "STASH SPOT A RED TEDDY BEAR".
"POWER" THEN STRUCK THE VICTIM IN THE HEAD WITH A LARGE GREY GOOSE VODKA BOTTLE CAUSING
THE LISTED INJURIES AND TOOK OVER 800 DOLLARS AND TWO CELL PHONES. "POWER" THEN LEFT THE
RESIDENCE.
THE VICTIM WAS UNABLE TO PROVIDE A WRITTEN STATEMENT OF THE INCIDENT.
THE VICTIM ALSO INFORMED R/O THAT "POWER" DATES A GIRL NAMED "ROXY" WHO LIVES SOMEWHERE ON
13TH STREET IN ALLENTOWN.
R/O ASKED THE VICTIM FOR HER LANDLORD INFORMATION. THE VICTIM ONLY KNOWS THE LANDLORD AS
"DANNY" AND THAT HE LIVES SOMEWHERE IN EASTON. THE VICTIM DID NOT KNOW THE LANDLORD'S
PHONE NUMBER BECAUSE SHE HAD IT STORED IN HER PHONE WHICH WAS TAKEN BY THE SUSPECT.
PICTURES WERE TAKEN OF THE VICTIM'S INJURIES BY THE APD ID UNIT.
THE VICTIM WAS INFORMED BY R/O TO MAKE CONTACT WITH APD AS SOON AS SHE FELT WELL ENOUGH TO
PROVIDE A WRITTEN STATEMENT ABOUT THE INCIDENT.


Signed/Authored by: WEISS,CHRISTOPHER R.


        APPROVED by: BRADER,BRIAN S.

# ALLENTOWN POLICE DEPARTMENT

## CONTINUATION SHEET

☐ ARREST                    ☐ SUSPECT SUPP ATTACH

☐ JUVENILE SUB INVOLVED  ☐ CONNECTED REPORTS

| COMPLAINT NO. | INCIDENT CODE | DATE OF REPORT |
|---|---|---|
| 09-8002 | | 28-JAN-09 |

**INVESTIGATIVE RESULTS**

1750

Responded to 301 N. 9th St., Apartment D for an assault.
Upon arrival Detectives Sannie and Cruz were on scene.  Officer Weis was also on scene.
Photos taken.
A broken piece of bottle was collected by Officer Weis.
I then responded to St. Luke's Allentown and I took photographs of the victim.
All photos saved onto the D and K drives.

| OFFICER PREPARING REPORT-PRINT | | ID | SUPERVISOR APPROVING REPORT | | ID | DATE |
|---|---|---|---|---|---|---|
| MARK SALGADO | | S8029 | *Rbh* | | 3319 | 1/30/09 |

| CLERK ID | DATE | THIS OFFENSE IS | 1. ☐ UNFOUNDED | 3. ☐ INACTIVE-NOT CLEARED | 5. ☒ CONTINUE INVESTIGATION |
|---|---|---|---|---|---|
| | | | 2. ☐ CLEARED BY ARREST | 4. ☐ CLEARED BY EXCEPTION | 6. ☐ CLEARED-NO ARREST |

REVISED 3/2007

AISLE 8

| PART 1 | EVIDENCE SUBMISSION | ALLENTOWN POLICE DEPARTMENT RECORDS AND IDENTIFICATION BUREAU REQUEST FOR EVIDENCE EXAMINATION - ANALYSIS |
|---|---|---|

**TYPE OF EXAMINATION - ANALYSIS**

- ☑ LATENT PRINTS
- ☐ TRACE (i.e. Blood, Hair, Fibers)
- ☐ PHOTOGRAPHIC DOCUMENTATION
- ☐ OTHER

**FOR IDENTIFICATION BUREAU USE ONLY**

| DATE RECEIVED 1/29/09 | TIME RECEIVED 0630 |
|---|---|
| RECEIVED FROM Wasilewski | RECEIVED BY RGH |

| REQUESTING OFFICER'S NAME | OFFENSE/INCIDENT TYPE | | |
|---|---|---|---|
| WEISS  W7108 | ARMED ROBBERY w/ INJURY | DATE 1/28/09 | COMPLAINT NUMBER 09 8002 |
| VICTIM (IF KNOWN) SHANIEL KENT | SUSPECT (IF KNOWN) "POWER" | LOCATION OF OCCURRENCE 301 N 9TH ST APT D | |

| ITEM NO. | PART II    EVIDENCE INFORMATION - DESCRIPTION |
|---|---|
| 1 | BOTTLE NECK FROM A LARGE GREY GOOSE VODKA BOTTLE |
| | |
| | MAGNA POWDER — Negative |
| | |

EXAMINATION - ANALYSIS COMPLETED BY    Sgt R. Heffelbiger H7344    DATE 1/30/09

| PART III    DISPOSITION OF EVIDENCE |
|---|

**UPON RECEIPT OF THIS NOTIFICATION - REPORT TO ID TO PICK UP EVIDENCE**

OFFICER NOTIFIED TO PICK UP EVIDENCE ON:

| RELINQUISHED TO | RELINQUISHED BY | DATE |
|---|---|---|
| EVIDENCE WAS | | |

- ☐ RETURNED TO OWNER
- ☐ SENT TO PROPERTY
- ☐ DESTROYED
- ☐ OTHER:

| SUPERVISOR APPROVING REPORT    RGH | DATE 1/30/09 |
|---|---|

Revised 3/2000

ORIGINAL - FILE
(WHITE)

Aisle-8A

| ALLENTOWN POLICE DEPARTMENT RECORDS AND IDENTIFICATION BUREAU | DATE OF REPORT | COMPLAINT NUMBER |
|---|---|---|
| | OFFENSE/INCIDENT TYPE | |

IDENTIFICATION SERGEANT | DATE | IDENTIFICATION SUPERVISOR | DATE